SOTHEREN's Lessee vs. REED.

1818.
JUNE, (E. S.)

Sotheren
vs
Reed.

APPEAL from *Queen-Anne's* County Court. Ejectment for a tract of land called *Wilson's Adventure.* Plea, the general issue.

J D obtained two judgments, one against J S, and the other against S W his surety: writs of *fieri facias* issued upon both judgments. The one against J S was laid upon his lands in April 1802, and the one against S W was entered satisfied at May term 1802. A *venditioni exponas* issued for a sale of the lands taken under the *fi. fa.* against J S, and was endorsed for the use of S W, and the lands were sold —*Held,* that the payment made by the surety on the judgment against him, and the subsequent entry of satisfaction of such judgment, did not affect the responsibility of the principal debtor, and that such a payment, subsequent to the levying of the *fi. fa.* against the principal, was to be considered is only operating, at law and in equity, as an assignment of the judgment against him, and therefore, that it was strictly correct to carry on the execution for the use of the surety to its full completion.

At the trial the plaintiff read in evidence a grant to *John Wilson,* and *Ann* his wife, for *Wilson's Adventure,* dated the 4th of July 1752, and thence deduced a regular title to *Clement Sewell,* deceased; and proved that said land was laid off as dower to *Cornelia,* his widow, the lessor of the plaintiff, who after the death of *Sewell* intermarried with *John Sotheren,* who is also since dead. The defendant then read in evidence a record of a judgment obtained by *Duhamell,* administrator of *Wilkinson,* against *Cornelia Sewell,* executrix of *Clement Sewell,* in *Queen Anne's* county court at May term 1799; and of a writ of *fieri facias* issued on said judgment, returnable to October term 1799, and which was returned *Nulla Bona.* Also a record of a judgment obtained in the name of the state, for the use of *Duhamell,* administrator of *Wilkinson,* against *John Sotheren,* and *Cornelia* his wife, at May term, 1801, in an action brought on the testamentary bond executed by the said *Cornelia,* then *Cornelia Sewell,* with *James O'Bryan* and *Samuel T. Wright* her sureties. Also a record of a judgment recovered in the name of the state, for the use afore said, against *Samuel T. Wright,* at the same term, in an action brought on the same bond. Also of a writ of *fieri facias* issued on the judgment against *Sotheren,* and wife, returnable to October term 1801, and the return of *Nulla Bona* thereon. Also of another writ of *fieri facias* issued on the judgment rendered against *Sotheren* and wife, and endorsed for the use of *Samuel T. Wright,* returnable to May term 1802, and the return thereof by the sheriff, that on the 30th of April 1802, he laid the same on, and had seized and taken a tract of land called *Wilson's Adventure,* assigned to the said *Cornelia,* in lieu of all her dower in the lands of her late husband *Clement Sewell,* and caused the same to be appraised, &c. which land remained in the hands of the said sheriff unsold for the want of buyers, &c. Also of a writ of *venditioni exponas,* returnable to October term 1802, commanding the said sheriff to expose to sale the said land, &c. and the return thereof by the sheriff that he did, on the 16th of October 1802, after due notice given, expose to public sale the said land, and that the same was struck off to *Samuel T. Wright,* for the amount of the debt, interest and costs, he being the highest bidder. The defendant gave no evidence of an assignment of the said judgment by *Duhamell* to *Samuel T. Wright.* He then read in evidence a deed from *James R. Pratt,* the sheriff, to *Samuel T. Wright,* for the land so seized and taken and sold as aforesaid, dated the 9th of August 1803. And it was admitted by the plaintiff that *Samuel T. Wright* died in June 1810. He also read in

1818.

Sotheren
vs
Reed

evidence a deed for the land from *Samuel T. Wright* to *William T. Wright,* dated the 23d of April 1804. Also a deed for the same land from *William T Wright* to the defendant, dated the 23d of December 1806. The plaintiff then read in evidence a record of a writ of *fieri facias,* issued on the judgment herein before mentioned, to have been obtained against *Samuel T. Wright,* returnable to October term 1801, and the return thereof by the sheriff, that on the 6th of November 1801, he laid the same on 50 acres of land, part of a tract called *Forlorn Hope,* and caused the same to be appraised, &c. which land remained in his hands unsold for the want of buyers. Also the docket entry, by which it appeared that the said writ of *fieri facias* and return had been quashed by order of court. The plaintiff further read in evidence the record of a second writ of *fieri facias,* issued on the last mentioned judgment, returnable to May term, 1802, of which said writ no return was made by the sheriff. Also the docket entry, by which it appeared that the same was entered "satisfied plaintiff, says attorney and sheriff." The plaintiff then proved by *T. Murphy,* clerk of *Queen Anne's* county court, that the said entry was made in the hand writing of *Samuel T. Wright,* who was at that time clerk of the said court. He also proved by *Duhamell,* the plaintiff in the aforementioned actions, that immediately after the quashing of the execution before mentioned, as having been issued against the said *Wright,* he received from *Wright* a part of the said debt, and that he received the residue before the next succeeding term of the said court. He then prayed the court to direct the jury, that if they should be satisfied by the evidence that the debt due as aforesaid was paid by *Samuel T. Wright,* the surety of *Cornelia Sewell,* before the sale of the land claimed in the declaration, under the *fieri facias* and *venditioni exponas* issued in the name of the state for the use of *Duhamell,* administrator of *Wilkinson,* for the use of *Samuel T. Wright,* that the sale was irregular, and that the defendant's title under it cannot be supported. But the Court, [*Earle,* Ch. J. and *Purnell,* A. J.] being of opinion, that notwithstanding an execution has been satisfied before sale under it, and that this satisfaction appears of record, a sale afterwards gives the purchaser a good title, unless the defendant moves to quash the writ on its return, refused to give the direction prayed. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, JOHNSON, MARTIN, and DORSEY, J.

*Carmichael,* for the Appellant, contended, that the surety who paid the money, having omitted to take an assignment of the judgment against his principal, under the act of 1763, *ch.* 23, is precluded from availing himself of that judgment. To show that advantage may be taken in an

action of ejectment of the defects in the proceedings under which the parties claim, he referred to *Putten vs. Purbeck*, 1 *Vent*. 259. S. C. 2 *Salk*. 563. *Tidd's Pr*. 434 *Stamford vs. Nedham*, 1 *Lev*. 160. *Runn Eject*. 110. At common law a surety paying the debt has no other remedy to recover it from the principal, than an action for money laid out and expended. That is the only remedy, except under the act of 1763, *ch*. 23, and that act not having been pursued the party cannot avail himself of the judgment against the principal so as to issue an execution thereon for his use. If the regularity of the execution ought generally to be called in question on its return, yet as the lessor of the plaintiff was then married, her coverture was a sufficient legal excuse for the omission to do so in this instance, 2 *Com. Dig*. 505. 1 *Blk. Com*. 442. *Rolls's Ab*. 851, 852; and *Co Litt*. § 594.

*Harrison*, for the Appellee, contended, that the execution issued regularly, and was in all respects formal; but that if it were irregular, the sale under it is valid. *Tidd's Pr*. 936 *Jeanes vs. Wilkins*, 1 *Ves*. 195. *Eyre vs. Woodfine*, *Cro. Eliz*. 278. *Amner and Luddington's* case, 3 *Leon*. 89.

JOHNSON, J. delivered the opinion of the court. The plaintiff on his part, showed in evidence a clear title in the lessor of the plaintiff to the land in question. To resist the title of the plaintiff, the defendant read in evidence the records of two original judgments obtained in *Queen-Anne's* county court, one against the lessor of the plaintiff, the *principal*, and the other against *Wright*, her surety. On those judgments writs of *fieri facias* issued, and the one against the lessor of the plaintiff was laid on the land in question. Subsequent to the execution being laid, the surety paid to the plaintiff who obtained the judgments, *the full amount of the principal*, interest and costs, and the judgment against the surety was entered satisfied. The *fieri facias* which had been laid on the land in question, was returned to May 1802, (at which term the judgment against the surety was entered satisfied,) stating that the property remained on hand for want of buyers—when a *venditioni exponas* issued, under which the land was sold to *Wright*, under whom the defendant claims.

No motion was made to quash the execution in the court below.

The question for this court to decide is, whether or not on these facts the plaintiff is entitled to recover?

The payment made by the surety on the judgment against him, and the subsequent entering of satisfaction, cannot affect the responsibility of the principal debtor. The court consider such a payment, subsequent to the execution being laid, as only operating at law and equity, as an assignment of the judgment against the principal

debtor, and that therefore it was strictly correct to carry on the execution for the use of the surety to its full completion.

The present is not a new question; the same point was determined on full consideration, in the case of *Norwood vs. Norwood,* 2 *harr. & Johns.* 238.

JUDGMENT AFFIRMED.